AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

United States Courts
Southern District of Texas
FILED
APR 28 2016
David J. Bradley, Clerk of Court

| United States of America v. Richard ARTEAGA Javier MARTINEZ-Magana Christopher MEDRANO | ) ) ) ) ) ) | Case No. H16-637 M |
|---|---|---|

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __April 27, 2016__ in the county of __Harris__ in the __Southern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 USC Section 841(a)(1), (b)(1)(a) | did knowingly and intentionally possess with intent to distribute more than 500 grams of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance; |
| 21 USC Section 846 | did knowingly conspire to intentionally possess with intent to distribute more than 500 grams of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance. |
| 18 USC Section 924 (c)(1)(A) | |

This criminal complaint is based on these facts:
See the affidavit (Attachment A) in support of a Criminal Complaint.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

John T. Bryson, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 04/28/2016

_____
*Judge's signature*

City and state: Houston, Texas

Nancy K. Johnson, Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § § | |
| v. | § § | CRIMINAL NO. |
| RICHARD ARTEAGA | § | |
| JAVIER MARTINEZ-MAGANA | § | UNDER SEAL |
| CHRISTOPHER MEDRANO | § | |

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, John T. Bryson, being duly sworn, depose and state as follows:

1. I am a Special Agent of the United States Drug Enforcement Administration within the meaning of Title 18, United States Code § 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code § 2516.

2. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C). I have been a Special Agent since December 2005. Since this time, and as part of my official duties, I have participated in investigations of narcotics trafficking, money laundering, complex conspiracies, and among other things, have conducted or participated in surveillances, the execution of search warrants, debriefings of informants and reviews of taped conversations. Through my training, education, and experience, I am familiar with the manner in which narcotics traffickers and money launderers conduct their operations, including, but not limited to, their methods of importing and distributing controlled substances, use of telecommunication devices to include cellular telephones, use of counter surveillance techniques, and use of numerical codes and coded and/or cryptic language, words, and references to conduct their transactions.

3. I have completed numerous courses of formal instruction given by the DEA and other agencies related to narcotics and financial investigations, including courses on narcotics trafficking, money laundering, and complex conspiracies. I have participated in and led investigations resulting in the arrest of numerous drug trafficking suspects, and in the seizure of substantial quantities of illegal narcotics and proceeds of narcotics sales. I have participated in investigations involving the interception of wire communications and the use of video surveillance. I am familiar with the manner in which narcotics traffickers and money launderers conduct their operations.

4. As part of my duties as a DEA Special Agent, I have participated in long-term historical conspiracy investigations, as well as Organized Crime and Drug Enforcement Task Force (OCDETF) investigations targeting international drug traffickers. I have testified in federal judicial proceedings. I have been involved in the debriefing of defendants, witnesses and informants, and others who know about the distribution and transportation of controlled substances, money laundering, and the concealment of proceeds derived from drug trafficking. Further, I have conducted or participated in physical surveillance, electronic surveillance, undercover transactions, and the execution of arrest and search warrants in numerous narcotics investigations.

5. Based upon my training, experience, and participation in controlled substance and money laundering investigations which have resulted from violation of the United States federal drug and money laundering laws, I prepared this Affidavit in support of a criminal complaint charging **Richard ARTEAGA, Javier MARTINEZ-Magana**

and Christopher **MEDRANO** with violating Title 21 USC § 841(a)(1) and (b)(1)(A); and § 846 to wit: to knowingly and intentionally manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers; and the conspiracy to knowingly and intentionally manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers and a criminal complaint charging **Richard ARTEAGA** with violating Title 18 USC § 924 (c)(1)(A) to wit: any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States uses or carries a firearm.

## PROBABLE CAUSE

6. On April 26, 2016, a DEA Houston Confidential Source (hereafter referred to as CS) negotiated over the phone with a male referred to as "JUNIOR", for the purchase of six kilograms of methamphetamine. JUNIOR agreed to have the methamphetamine delivered to the CS for a purchase price of $12,000.00 United States Currency (USC) per kilogram of methamphetamine. Later the same day, a male, later identified as Nelson GALLEGOS (hereafter referred to as GALLEGOS), telephonically contacted

the CS to finalize the time and place to exchange the money for methamphetamine. The CS and GALLEGOS agreed to meet the following day.

7. On April 27, 2016, the CS telephonically contacted GALLEGOS and agreed to meet GALLEGOS at the Mambos Seafood restaurant located at 10810 North Freeway, Houston, Texas. At approximately 1:00 p.m., the CS arrived at the Mambos and was met in the parking lot by GALLEGOS. During the meeting in the parking lot, Special Agent Kenneth Delgado and Houston Police Officer Jose Benavides confirmed that the person meeting the CS was GALLEGOS based on his Texas Drivers' License photograph. The CS and GALLEGOS entered the restaurant and ate lunch. Approximately 25 minutes later, the CS and GALLEGOS left the restaurant and the CS returned to his/her vehicle. GALLEGOS entered the passenger seat of a tan colored Chevrolet Tahoe that was parked in the lot. Christopher MEDRANO (hereafter referred to as MEDRANO) was in the drivers' seat of the Tahoe. Prior to GALLEGOS entering the vehicle, DEA surveillance had observed MEDRANO in the Tahoe during the entire duration of the lunch meeting. The Tahoe, followed by the CS, traveled to the Walmart shopping center located at 10411 North Freeway, Houston, Texas. After parking in the parking lot of the Walmart, GALLEGOS informed the CS that the methamphetamine would be delivered to the parking lot. A short time later, a white colored GMC Arcadia arrived in the lot and GALLEGOS approached the driver, Richard ARTEAGA (hereafter referred to as ARTEAGA). After GALLEGOS spoke briefly to ARTEAGA through the open drivers' window, ARTEAGA backed the Arcadia into the parking space next to the Tahoe. ARTEAGA and the passenger of the Arcadia, Javier MARTINEZ-Magana, exited the

vehicle. Javier MARTINEZ-Magana lifted the rear door to the Arcadia. GALLEGOS and the CS stood at the rear of the Arcadia and focused their attention on the cargo area of the Arcadia. ARTEAGA opened a cardboard box that was inside the cargo area and told the CS that there was one and the other five were at the house. While ARTEAGA was talking to the CS, Javier MARTINEZ-Magana moved the Tupperware containers to the center of the cargo area where the CS could get a better look at the methamphetamine.

8. The CS visually inspected the methamphetamine and gave the visual bust signal to the Agents in the parking lot. As Agents and marked Houston Police vehicles approached the Arcadia and Tahoe, GALLEGOS got in the Tahoe allowing himself and MEDRANO to flee the location. While attempting to evade the marked police cars, MEDRANO was able to distance the Tahoe far enough ahead of the police cars that he was able to slow the Tahoe down to a speed that allowed GALLEGOS to jump from the moving vehicle and evade law enforcement. MEDRANO continued to flee for approximately five more minutes in the Tahoe before he stopped and complied with the officers' commands.[1]

9. ARTEAGA and MARTINEZ-Magana were both taken into custody near the Arcadia. During a search of the Arcadia, a semi-automatic Berrata 9mm handgun, bearing serial number PX171549, was located beside the drivers' seat. Texas Department of Public Safety Narcotics Agent Craig Ward read ARTEAGA his Miranda Rights. ARTEAGA stated that he understood his rights and agreed to speak to law enforcement. ARTEAGA stated that the handgun in the Arcadia belonged to him.

---

[1] After MEDRANO was advised his rights and waived them, MEDRANO stated that when the Arcadia arrived in the Walmart parking lot, GALLEGOS instructed MEDRANO to start the Tahoe in case law enforcement arrives.

Agents located a cardboard box in the rear cargo area of the Arcadia that contained two Tupperware containers. Each container was filled with a crystal substance that field tested positive for methamphetamine. The total weight of both methamphetamine filled containers is approximately 1.2 kilograms.

**[INTENTIONALLY LEFT BLANK]**

## CONCLUSION

10. Based upon the above, I submit there is probable cause to believe that Richard ARTEAGA, Javier MARTINEZ-Magana and Christopher MEDRANO, have knowingly and intentionally manufactured, distributed, or dispensed, or possessed with intent to manufacture, distribute, or dispense, 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers; and the conspiracy to knowingly and intentionally manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, its salts, isomers, or salts of its isomers, in violation of Title 21 USC § 841(a)(1) and (b)(1)(A); and § 846 and a criminal complaint charging Richard ARTEAGA with violating Title 18 USC § 924 (c)(1)(A) to wit: any person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States uses or carries a firearm.

_____
John Bryson, Special Agent
Drug Enforcement Administration

Sworn and subscribed to before me this 28th day of April, 2016, and I find probable cause.

_____
HON. NANCY K. JOHNSON
United States Magistrate Judge